Neil L. Henrichsen, Esq.
Henrichsen Law Group, P.L.L.C.
Attorneys for Plaintiffs
301 West Bay Street, Suite 1400
Jacksonville, FL  32202
(904) 381-8183
(904) 212-2800 (facsimile)
E-mail: nhenrichsen@hslawyers.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**(TRENTON DIVISION)**
_____x

**JONATHAN NEEDHAM and**
**WALTER DOWMAN,**

     Plaintiffs,

v.

**THE CHUBB CORPORATION,**
**A New Jersey corporation,**
**BELLEMEAD DEVELOPMENT**
**CORPORATION, a Florida corporation,**
**and HALIFAX PLANTATION GOLF**
**MANAGEMENT, INC., A Florida**
**corporation, the RETIREMENT**
**ADMINISTRATIVE COMMITTEE,**
**Plan Administrator,**

     Defendants
_____x

**COMPLAINT**

No. _____ ECF CASE
Jury Trial Demanded:  No

     **COME NOW**, the Plaintiff Jonathan Needham and Jason Dowman, by and through their undersigned counsel, bring this Complaint against Defendants The Chubb Corporation, Bellemead Development Corporation, Halifax Plantation Golf Management, Inc. and the Retirement Administrative Committee to obtain benefits for which they were eligible or for which they should have been eligible but for the Defendants' wrongful conduct and breach of fiduciary duty in

violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* and in support thereof states as follows:

## JURISDICTION & VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1), which provides for jurisdiction of actions brought under Title I of ERISA.

2. This Court has personal jurisdiction over each of the Defendants as Defendant The Chubb Corporation ("Chubb") operates in the District and Defendants Bellemead Development Corporation and Halifax Plantation Golf Management report to and provide revenue to Defendant Chubb in the State of New Jersey.

3. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) as the wrongful acts occurred in this District and the Defendants may be found in this District.

## PARTIES

4. Jonathan Needham was a resident of Ormond Beach, Volusia County, Florida. Since Mr. Needham began working at Halifax Plantation Golf Club, Ormond Beach, Florida (the "Halifax Plantation"), in or around 1992, he has been under the direction of Defendant Bellemead Development Corporation's officers and directors. Mr. Needham left Halifax Plantation in September 1993 but returned in July 1996 as General Manager. Mr. Needham was General Manager of Halifax Plantation Golf Club until approximately October 2017.

5. Walter Dowman is a resident of Ormond Beach, Volusia County, Florida. Since Mr. Dowman began working at Halifax Plantation in or around January 1993, Mr. Dowman worked under the direction of Defendant Bellemead Development Corporation's officers and directors. Mr. Dowman was a golf pro at Halifax Plantation Golf Club until approximately 2018.

6. Defendant The Chubb Corporation ("Chubb") is a multibillion dollar, global property and casualty insurance firm with its home office located at 15 Mountain View Road, Warren, Somerset County, New Jersey. Chubb also is the parent company for many subsidiaries, including Defendant Bellemead Development Corporation.

7. Defendant Bellemead Development Corporation ("BDC"), a New Jersey Corporation formed in the 1920s, is a wholly owned subsidiary of Defendant Chubb which operates facilities at Halifax Plantation. BDC's Florida office is located at 3400 Clubhouse Drive, Ormond Beach, FL 32174. BDC is engaged in the development and sale of home sites in the Halifax Plantation community located in Ormond Beach, FL. BDC was first registered in Florida as a foreign for profit corporation in 1927.

8. Defendant Halifax Plantation Golf Management, Inc. is located at 3400 Clubhouse Drive, Ormond Beach, FL 32174 and is named as a defendant in this action pursuant to Federal Rules of Civil Procedure Rule 19, solely to assure that complete relief may be granted. Upon information and belief, Halifax Plantation Golf Management, Inc. is used by Chubb and BDC as a mechanism to wrongfully exclude employees from participating in the ERISA benefits plan offered to BDC and Chubb employees.

9. Defendant Retirement Administrative Committee (the "Committee"), whose offices are located in Warren, NJ, is the current administrator of the Pension Plan of The Chubb Corporation, Chubb & Son Inc. and Participating Affiliates (the "Pension Plan"), the Capital Accumulation Plan of The Chubb Corporation, Chubb & Son Inc. and Participating Affiliates (the "CCAP"), and The Chubb Corporation Employee Stock Ownership Plan (the "ESOP") (collectively, the "Plan"). The Plan administrator was formerly the Employee Benefits Committee. Retirement Administrative Committee performs all duties of the Plan Administrator under ERISA.

**FACTS GIVING RISE TO RELIEF**

10. Halifax Plantation is a planned community located in Ormond Beach, Florida. Halifax Plantation has a clubhouse, golf course, tennis, swimming and a fitness center. Memberships are offered to residents and non-residents for use of the facilities at Halifax Plantation.

11. In 1992, a Florida For Profit corporation was formed named Halifax Plantation Golf Management, Inc. ("HPGM"). Upon information and belief, Halifax Plantation Golf Management, Inc. was formed by Defendant Chubb or its predecessor as a wholly owned subsidiary.

12. From the beginning of the development of Halifax Plantation community, employees of BDC have managed its operations. For example, the project manager for the Halifax Plantation residential home development in 1993 was Don Henderson, a BDC employee. Mr. Needham was supervised by and reported to Henderson. At the time of his hiring, Mr. Needham was listed on his new hire coversheet as both a BDC and HPGM employee.

13. Further, Henderson was president of HPGM along with another Bellemead employee who was named officers or directors of HPGM. At the time, Plaintiff Needham was considered a HPGM employee but receiving his paycheck from Defendant Chubb. Plaintiff Bowman was also considered an HPGM employee but received his paycheck from Defendant Chubb.

14. In 1997, Anthony Uanino, a Bellemead employee, took over operations at Halifax Plantation. Despite the fact that Plaintiff Needham was the General Manager at Halifax Plantation, his direct report supervisor was Anthony Uanino. Further, Uanino replaced Don Henderson as president of Halifax Plantation Golf Management, Inc.

15. By 1997, all BDC employees in Ormond Beach, Florida were located at Halifax Plantation. BDC employees worked right alongside HPGM employees, in some instances, performing the exact same jobs under the direction and supervision of BDC management.

16. Throughout all times relevant to this Complaint, HPGM had no administrative staff. For example, the receptionist for the Halifax Plantation clubhouse was a BDC employee. Certain accounting and bookkeeping functions for BDC and HPGM was performed by BDC employees. The Human Resources function for HPGM was performed by a BDC employee.

17. The profits from both BDC and HPGM were sent to Defendant Chubb at its headquarters in New Jersey.

18. Neither Plaintiff had access to any information related to the benefits plan offered to BDC employees versus what was offered to HPGM employees.

19. Uanino remained in charge of all employees at Halifax Plantation until his retirement in March 2014.

20. In March 2014, Plaintiff Needham was named President of Halifax Plantation Golf Management, Inc. Additionally, as general manager, Plaintiff Needham was now overseeing all the operations of Halifax Plantation.

21. In April 2014, Plaintiff Needham discovered the existence of a summary plan description offered by Defendant Chubb to its employees and to the employees of its affiliates, including BDC.

22. Upon review of this summary plan description, Plaintiff Needham discovered that he, Plaintiff Dowman and the HPGM employees had been denied valuable benefits provided by Chubb to its employees and the BDC employees.

23. Specifically, no HPGM employee was offered participation in the plan offered to BDC employees which included the Pension Plan, the Chubb Capital Accumulation Plan or Employee Stock Ownership Plan (the "Plan"), all of which were very valuable benefits provided to BDC employees who were doing the same or similar jobs at the exact same location for the exact same management group.

24. As of April 2014, Plaintiff Needham has been performing all the functions and duties Uanino had been performing before his retirement; however, because of the corporate sham of HPGM, Needham is being prevented by the Defendants from receiving the same benefits Uanino had enjoyed for years.

25. Similarly, Plaintiff Dowman has been performing his duties under the supervision and direction of BDC management; however, because of the corporate sham of HPGM, Dowman has been prevented from receiving the same benefits BDC employees had enjoyed for years.

26. Until April 2014, the HPGM officers and/or directors were mainly management level employees of BDC or Chubb. Through these officers and directors, BDC and Chubb controlled the operations and management of HPGM. Prior to April 2014, HPGM did not have its own officers or directors, independent of Chubb or BDC.

27. In fact, Chubb has only recognized BDC as its subsidiary dealing with real estate markets. In its SEC filings, Chubb refers only to "BDC and its subsidiaries" involved in residential development activities primarily in central Florida. This reference to residential development activities in central Florida is Halifax Plantation. Clearly, Chubb considers BDC to be the main driver of its real estate activities in central Florida and considers HPGM to be a subsidiary of and controlled by BDC which Chubb in turn controls.

28. Plaintiffs Needham and Dowman as well as other employees of HPGM were supervised and directed by BDC employees, and should have been deemed employees of BDC and/or Chubb eligible for participation in the Plan for purposes of ERISA. However, BDC and Chubb used their control over HPGM to unlawfully exclude Plaintiffs and all employees of HPGM from being participants in the Plan.

29. Chubb and BDC's unlawful actions have resulted in extremely inequitable and unjust differences between the benefits available to the Plaintiffs and all HPGM employees who were directed and supervised BDC and in some cases performed the same work as BDC employees.

30. For example, BDC employees are eligible for a pension, profit sharing and receipt of shares of stock in Chubb through the Plan. These benefits were denied to the Plaintiffs and other employees of HPGM. As long time employees, the Plaintiffs have lost thousands of dollars worth of pension benefits, profit sharing pay outs and stock appreciation while BDC employees working under the same management at the same location have enjoyed these benefits and can look forward to the financial security of these benefits.

31. The injustice relating to the Plan as set forth herein is the type of harm to employees which ERISA was designed to eliminate.

32. The injustice relating to the Plan as set forth herein can only be rectified by ignoring the corporate sham of HPGM for the purposes of ERISA, piercing the corporate veil of HPGM for the purposes of ERISA, deeming the Plaintiffs eligible employees under the Plan allowing full participation going forward and providing them with all benefits wrongfully denied them in the past.

33. On or about November 1, 2016, Plaintiffs timely filed a lawsuit in this Court seeking their rights and benefits against the Plan to which they are entitled. The case was captioned *Jonathan Needham and Jason Dowman v. The Chubb Corporation, Bellemead Development Corporation, Halifax Plantation Golf Management, Inc. and the Retirement Administrative Committee,* Case 3:16-cv-08129-PGS-LHG ("Lawsuit #1").

34. The claim by Plaintiffs in Lawsuit #1 was for the denial of benefits to Plaintiffs.

35. After motions for summary judgment, by Opinion and Order dated April 11, 2019, the Court, *inter alia*, denied summary judgment on behalf of the Retirement Administrative Committee finding that finds the Committee's decision was arbitrary and capricious. The claim of Plaintiffs against the Committee was remanded to the Committee for further review.

36. In or around September 2019, for the first time the Defendants admitted through the Committee that "Chubb or Bellemead may have occasionally provided infusions of capital or other support to Halifax. . ." or that "Chubb and Bellemead employees may have interacted with or worked alongside Halifax employees in certain situations." Also in September 2019, the Committee issued a "tentative" finding regarding the Plaintiffs' claims, but not a final finding.

37. By correspondence dated January 27, 2020 ("January 27, 2020 Letter"), the Defendants then admitted to now reviewing loan documentation, tax returns, and other information, which show that Halifax was a shell corporation at all times relevant herein. Thereafter, Defendants as members of the Committee and influencing the Committee, wrongfully and improperly pressed the denial the Plaintiffs' claims for benefits under the Plan breaching their respective fiduciary duty owed to Plaintiffs.

38. In the January 27, 2020 Letter, Defendants also admit for the first time that they have reviewed tax and other documentation generally showing no profit or other financial viability

8

of Halifax. Despite that finding, however, Defendants claim that such information does not support that "financial support from a parent to a subsidiary corporation invalidates the corporate form of Halifax Golf . . . or that it "did not find any grounds to believe that financial support from a parent to a subsidiary is somehow abusive of the corporate form and found no support in the Claimant's submissions to support this assertion."

39. Based upon the January 27, 2020 Letter, the Defendants, as fiduciaries related to the Plan, have further engaged in the sham of Halifax as a separate entity and the denial of proper benefits under the Plan to Plaintiffs and other employees.

40. The Plaintiffs have exhausted all administrative remedies available to them and have not been provided the relief required under law by the Committee.

41. This action is timely brought and all conditions precedent to its commencement have occurred, been waived or have been satisfied.

## **COUNT I**
**(Action to Enjoin Further Violations of ERISA Against all Defendants)**

42. Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs 1 through 41 as if fully set forth herein.

43. The Plan is an employee benefit plan within the meaning of ERISA, 29 U.S.C. §§1002 (1), (2)(A) and (3).

44. Defendants Chubb and/or BDC are the Plan sponsors who created the basic terms of the Plan. Upon information and belief, Chubb decides to which subsidiaries' employees the plans are extended.

45. Defendants Chubb and/or BDC are employers within the meaning of ERISA, 29 U.S.C. §§1002 (5).

46. Defendant Chubb extended the full benefits of the Plan to BDC employees including the Pension Plan, the Chubb Capital Accumulation Plan and the Employee Stock Ownership Plan. All BDC employees who were permitted to participate in the Plan were located at Halifax Plantation, working alongside the employees of HPGM.

47. As outlined above, Defendant Chubb and BDC controlled HPGM to the extent that HPGM was not a truly independent entity. The Defendants used the corporate form of HPGM as a sham to purposefully exclude the Plaintiffs from participation in the Plan.

48. But for Defendant Chubb and BDC's wrongful act of maintaining the corporate sham of HPGM, the Plaintiffs would have been eligible participants in the Plan as employees of BDC pursuant to ERISA, 29 U.S.C. §§ 1002(6) and (7).

49. The corporate form of HPGM should be ignored for purposes of ERISA and the Plaintiffs recognized as employees Defendant Chubb and/or BDC because the HPGM corporate form is being used to purposely disadvantage the Plaintiffs by excluding them from participation in the Plan. Further, Chubb and BDC effectively controlled all aspects of HPGM, including directing the work of the Plaintiffs through their own employees and disregarding the separate identity of HPGM.

50. As outlined above, Plaintiffs are actually employees of BDC and/or Chubb, working under the direction and control of BDC management and receiving their pay from Chubb. Therefore, Plaintiffs are participants eligible to receive benefits under the Plan pursuant to ERISA.

51. Pursuant to ERISA, 29 U.S.C. § 1132(a)(3)(A), Plaintiffs are seeking an order enjoining the Defendants from continued breaches of fiduciary duties owed Plaintiffs in violation of ERISA through the unlawful and unjust use of the HPGM corporate form to purposely exclude the Plaintiffs from full participation in the Plan, ignoring the corporate form of HPGM for purposes

of ERISA and requiring the Defendants to allow Plaintiffs to participate fully in the Plan benefits available to BDC employees, current or former.

52. Pursuant to ERISA, 29 U.S.C. § 1132(a)(3)(B), Plaintiffs are seeking an order awarding them the appropriate equitable relief to redress the violations of ERISA described above through the Defendants' unlawful and unjust use of the HPGM corporate form to purposely exclude the Plaintiffs from full participation in the Plan, ignoring the corporate form of HPGM for purposes of ERISA and enforcing the terms of the Plan by requiring the Defendants to allow Plaintiffs to participate fully in the Plan benefits available to BDC employees, current or former.

53. Plaintiffs have been required to hire the undersigned law firm and have agreed to pay it reasonable fees and costs to bring this suit, for which the Defendants are liable pursuant to 29 U.S.C. § 1132(g).

## COUNT II
### (Action to Recover Benefits Against the Committee)

54. Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs 1 through 41 as if fully set forth herein.

55. For years, the Plaintiffs worked alongside BDC employees and under the direction and control of BDC and Chubb, with no knowledge that they were being purposefully and wrongfully excluded from valuable benefits offered under the Plan.

56. The Plan is an employee benefit Plan within the meaning of ERISA, 29 U.S.C. §§1002 (1), (2)(A) and (3).

57. Defendants Chubb and/or BDC are the Plan sponsors who created the basic terms of the Plan. Upon information and belief, Chubb decides to which subsidiaries' employees the plans are extended.

58. Defendants Chubb and/or BDC are employers within the meaning of ERISA, 29 U.S.C. §§1002 (5).

59. Defendant Chubb extended the full benefits of the Plan to BDC employees including the Pension Plan, profit sharing, the Chubb Capital Accumulation Plan and the Employee Stock Ownership Plan. All BDC employees who were permitted to participate in the Plan were located at Halifax Plantation, working alongside the employees of HPGM.

60. As outlined above, Defendant Chubb and BDC controlled HPGM to the extent that HPGM was not a truly independent entity. The Defendants used the corporate form of HPGM as a sham to purposefully exclude the Plaintiffs from participation in the Plan.

61. But for Defendant Chubb and BDC's wrongful act of maintaining the corporate sham of HPGM, the Plaintiffs would have been eligible participants in the Plan as employees of BDC pursuant to ERISA, 29 U.S.C. §§ 1002(6) and (7).

62. The corporate form of HPGM should be ignored for purposes of ERISA and the Plaintiffs recognized as employees Defendant Chubb and/or BDC because the HPGM corporate form is being used to purposely disadvantage the Plaintiffs by excluding them from participation in the Plan. Further, Chubb and BDC effectively controlled all aspects of HPGM, including directing the work of the Plaintiffs through its own employees and disregarding the separate identity of HPGM.

63. As outlined above, at all times during their employment, Plaintiffs were actually employees of BDC and/or Chubb, working under the direction and control of BDC management and receiving their pay from Chubb. Therefore, Plaintiffs were participants eligible to receive benefits under the Plan pursuant to ERISA.

64. Throughout their employment, Plaintiffs have been wrongfully denied participation in the Plan through the use of the HPGM corporate form by Defendants Chubb, BDC and HPGM in violation of ERISA and its protection of employees from being deprived of anticipatory benefits because of a corporate sham.

65. Plaintiffs have submitted their claim to the Committee for benefits wrongfully withheld from them as required by the Plan and have fully exhausted their administrative remedies. Defendant Committee wrongfully denied Plaintiffs' claims by letter dated January 27, 2020, based upon the sham corporate form to exclude the Plaintiffs as beneficiaries of the Plan.

66. Pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B), Defendant Committee is liable to the Plaintiffs for the benefits wrongfully denied to them through the improper and unjust use of the HPGM corporate form. Specifically, the Plaintiffs are due delinquent employer contributions to the Pension Plan, delinquent employer contributions to the Capital Accumulation Plan, delinquent employer contributions through the profit sharing plan and the Employee Stock Ownership Plan.

67. Plaintiffs have been forced to hire the undersigned law firm and have agreed to pay it reasonable fees and costs to bring this suit, for which the Defendants are liable pursuant to 29 U.S.C. § 1132(g).

## COUNT III
### (Breach of Fiduciary Duty Against All Defendants)

68. Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs 1 through 52 as if fully set forth herein.

69. ERISA § 404(a), 29 U.S.C. § 1004(a), requires that a fiduciary discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and

fiduciaries and defraying reasonable expenses of administering the plan, and in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with other provisions of ERISA.

70. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a beneficiary of a plan to file suit to "enjoin any act or practice" that violates Title I of ERISA or the terms of a plan, and/or to obtain "other appropriate relief" to redress such violations. ERISA § 205(a)(2), 29 U.S.C. § 1055(a)(2), is part of Title I of ERISA.

71. By engaging in the acts and omissions described above, including but not limited, participating in an on-going cover-up related to the sham corporate entity Halifax, to interpreting the Plan in a manner contrary to applicable federal law, refusing to apply the law in effect at the time of Plaintiffs' claims, and refusing to provide Plaintiffs benefits mandated by ERISA, Defendants have breached their fiduciary duty to Plaintiffs and have violated Title I of ERISA.

72. As a result of Defendants' breaches of fiduciary duty and violations of Title I of ERISA, Plaintiffs have been harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendant Committee on Count II, and against all Defendants on Counts I and III of the Complaint, and seek the following additional relief:

A. A declaration pursuant to ERISA that the Defendants have violated ERISA through the wrongful use of corporate form of HPGM to wrongfully deny the Plaintiffs eligibility and participation in the Plan in the manner described above.

      B.      An injunction preventing the Defendants from continuing to use the corporate form of HPGM to wrongfully deny the Plaintiffs eligibility and participation in the Plan in the manner described above in the future.

      C.      An order awarding the Plaintiffs the value of benefits wrongfully denied them by the Defendants through the wrongful use of the corporate form of HPGM throughout their employment with the Defendants.

      D.      Such further and other equitable relief authorized by ERISA to redress the violations by the Defendants or to enforce the terms of the Plan under ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B).

      E.      The cost of the suit, including attorneys' fees under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1).

      F.      Pre judgment and post-judgment interest.

      G.      Other such and further relief as the Court deems appropriate.

Dated: March 31, 2020                                      Respectfully submitted,

                                                                 */s/ Neil L. Henrichsen*
                                                                 Neil L. Henrichsen
                                                                 HENRICHSEN LAW GROUP, P.L.L.C.
                                                                 301 West Bay Street, Suite 1400
                                                                 Jacksonville, FL 32202
                                                                 (904) 381-8183
                                                                 (904) 212-2800 (facsimile)
                                                                 nhenrichsen@hslawyers.com

                                                                *Attorney for Plaintiffs*