UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELLEN NEEDHAM, Personal Representative of the Estate of Jonathan Needham, and WALTER DOWMAN, <br><br>               Plaintiffs, <br><br> v. <br><br> THE CHUBB CORPORATION, a New Jersey corporation, BELLEMEAD DEVELOPMENT CORPORATION, a Florida corporation, HALIFAX PLANTATION GOLF MANAGEMENT, INC., A Florida corporation, and the RETIREMENT ADMINISTRATION COMMITTEE, Plan Administrator. <br><br>               Defendants. | Civil Action No. <br><br> 3:20-cv-3470 (PGS) (LHG) <br><br><br> **MEMORANDUM** |

This matter comes before the Court on a motion for summary judgment and for judgment on the pleadings. (ECF No. 20). The Court has jurisdiction because the dispute concerns a denial of ERISA benefits.[1] The Plaintiffs are Ellen Needham, widow and personal representative of Jonathan Needham ("Decedent"),

---

[1] Oral argument was heard on March 21, 2022.

1

and Walter Dowman ("Dowman"). The Defendants are the Chubb Corporation ("Chubb"), Bellemead Development Corporation ("Bellemead"), Halifax Plantation Golf Management, Inc. ("Halifax"), and the Retirement Administration Committee ("the Committee") (collectively "the Defendants").  The Committee administers the Chubb Pension Plan ("the Pension Plan"), the Capital Accumulation Plan ("the CCAP"), and the Employee Stock Ownership Plan ("ESOP") (collectively "the Plans").

## I.

This case revolves around Bellemead's development of a golf course community in Ormond Beach, Florida known as Halifax Plantation and the employees' ERISA benefits. The dispute previously came before me in November 2016 when Decedent and Dowman challenged Defendants' initial denial of their claims for benefits under the Plans ("the 2016 lawsuit").[2] A full recitation of the facts was set forth in the Court's prior summary judgment memorandum[3] in the 2016 Lawsuit and is incorporated herein by reference. Some pertinent facts are repeated below.

Bellemead, a wholly-owned subsidiary of Chubb, is an Affiliated Employer of Chubb that was eligible to adopt the Plans such that its employees could

---

[2] Case No. 3:16-cv-8129.

[3] *Dowman v. Chubb Corp.*, 2019 U.S. Dist. LEXIS 63021 (D.N.J. Apr. 11, 2019).

participate. (Def. Statement of Material Facts ("SOMF") at ¶¶9, 26-27, ECF No. 22). On November 7, 1991, Bellemead adopted the CCAP. *Id.* at ¶28.

In 1992, Bellemead incorporated Halifax Plantation Golf Management, Inc. as a wholly owned subsidiary to operate the golf course in Ormond Beach. *Id.* at ¶¶7-8.

According to the Committee, Decedent worked for Halifax from April to September of 1993, and rejoined in 1996 as general manager, remaining in that position for approximately 21 years until 2017. *Id.* at ¶¶1-3.  Mr. Dowman worked for Halifax as the golf pro for approximately 25 years, between 1993 and 2018. *Id.* at ¶¶4-5.

At times, Bellemead and Chubb infused large sums of capital and other support into Halifax. For example, between 1992 and 1998, Bellemead paid the wages of the alleged Halifax employees, including Decedent and Dowman, issued their paychecks that were embossed with the Chubb logo, and issued W-2 forms to Decedent and Dowman. *Id.* at ¶¶13-15. Despite the above actions, Bellemead's internal payroll system listed Decedent and Dowman's "Branch" as "Halifax P1 Golf" and their "Department and Section" as "Bellemead." *Id.* at ¶16. On another document, titled "Salary Control Report as of July 2, 1997," both Decedent and Dowman were listed in the Halifax section of the salary report. (CD1146-47).

In or around January 1997, Halifax's management held a strategy meeting wherein major changes in the wages and benefit rights of Halifax employees were evidently discussed.  As a result, there was a decision to "[m]ake preparations to leave [the] Chubb payroll" and "[w]ork to isolate departments." (CD2722). Defendants' subsequent actions appear to implement this intent, namely segregating Halifax employees from those of Bellemead. Specifically:

(1)     Chubb's Board of Directors amended the Plans to expand the approved list of participating employers, including Federal Insurance Company, Chubb Custom Insurance Company, Chubb Custom Market, Inc., and Chubb & Son of Illinois. (Def. SOMF at ¶30).

(2)     During this same time, Halifax failed to take any steps to enroll as a participating employer under the terms of the Plans.  *Id.* at ¶29.

(3)     In or around the 1998 timeframe, Bellemead utilized a system to identify each employee and designate the entity to which each employee was assigned.  It is called the "A330 System." Bellemead employees were internally categorized in the A330 system as "OCF" or "ORD" (CD3114 n.12) while Halifax's employees like Decedent and Dowman were categorized as "ORU." (CD2845 n.7, 2876, 2888).

(4)     In early March 1998, Halifax created its own payroll system which paid its employees directly, and in 1999 created the Halifax Plantation 401(k) Profit Sharing Plan & Trust. *Id*. at ¶¶20-21.

(5)     On September 14, 1998, Halifax's then-President Anthony Uanino wrote to UNUM Insurance to terminate Halifax's coverage under a Chubb disability plan because Halifax decided that its "Florida golf related operation [should] be separate from the other Chubb operators." (CD2518).

The designation of employees under the A330 System in particular baffled Decedent and Dowman because they allegedly worked alongside many of the Bellemead (ORD and OCF) designated employees on an everyday basis, and their job duties overlapped.  Below are some examples cited by Decedent and Dowman of individuals they worked in conjunction with, but were treated as Bellemead employees:

*     Gretchen Simpson, Arnold Drago and Joseph Palasak were designated as Bellemead employees and members of the Plans (Pl. Opp. at 4, ECF No. 27); however, the Committee found that after their transfer to the Halifax payroll, their retirement eligibility under the Plans ceased. (CD2845 n.9).

*     Ken Noble, a supervisor at Halifax for one year (1993) was designated as a Halifax employee; but the Committee noted he was "a shared service

employee" and he was transferred from another location, thus becoming eligible for the Plans. (CD2845 n.10, 3065 n.1).

     \*     Eileen Jordan , a payroll administrator, was a Bellemead employee because she was a shared service employee and had responsibilities over some other Bellemead employees at the Halifax property. (CD2844).

     \*     Ruth Sarno, a receptionist, worked in the clubhouse and she reported to Mr. Uanino, President of Halifax and an executive of Bellemead. So, like Mr. Uanino, Ms. Sarno was treated as a Bellemead employee. (CD3113).

     \*     John Collins originally developed the Halifax Plantation for Bellemead and was treated as a shared service employee of Bellemead. (CD2844).

By the end of 1998, Needham and Dowman were on Halifax's payroll and were participating in the Halifax profit sharing plan (CD1160-63) [4] rather than being enrolled in the Plans.

Another 14 years elapsed under the Halifax plan (2012), whereupon the Halifax Board of Directors determined that a third party should be retained to perform the day-to-day operations of Halifax. (Def. SOMF at ¶¶22-25).[5]  Halifax contracted with ADP Total Source ("ADP") to perform golf course services and ADP in turn re-hired the former employees of Halifax as its employees. In short,

---

[4] *See also Dowman*, 2019 U.S. Dist. LEXIS 63021, at \*7.
[5] The Defendants in their brief call this decision a "co-employer relationship."

Halifax fired its employees and ADP re-hired them with a lease of services back to Halifax. (Def. Brief at 5, ECF No. 21). The Halifax retirement plan was then evidently assigned or assumed into the ADP TotalSource Retirement Savings Plan in some fashion. (CD1160-61). So, at the end of 21 and 25 years of continued service to Halifax, Decedent and Dowman's retirement benefits are significantly less than others who are allegedly covered by the Plans.

## II.

In the 2016 lawsuit, I partially granted Defendants' motion for summary judgment in favor of Halifax, Bellemead, and Chubb for the same reason I do herein,[6] but I denied the motion as to the Committee. That decision was remanded for further consideration for two reasons. The first reason is that there was a statutory breach of a due process requirement wherein Decedent and Dowman were denied an opportunity to be heard by the Committee (29 U.S.C. § 1133); and secondly there were several material documents referred to in Decedent and Dowman's brief that were not explained or discussed by the Committee's final decision.[7]

On remand, the Committee reconsidered its past determinations, and expanded its scope of review to also include:

---

[6] *See* Section III.
[7] *Dowman*, 2019 U.S. Dist. LEXIS 63021, at *24-26.

- Decedent's August 15, 2018 certification stating that he and Mr. Dowman in fact "performed services for Bellemead during [their] entire tenure at … Halifax" ("the Decedent's Declaration").

- The September 14, 1998 letter from Mr. Uanino pertaining to changes in Chubb's employee disability plans ("the Uanino Letter"). (CD2518).

- Written testimony from August 15, 2019 submitted by Decedent and Dowman explaining how their work for Halifax was "intertwined" with that of Bellemead's employees. (CD2783-86).

- Assorted tax returns from 2015 and a December 2017 Unemployment Compensation Employer's Quarterly Report related to the "Halifax Planation entities," consisting of Defendant Halifax as well as Halifax Plantation Realty Inc., Halifax Plantation Inc., and Halifax Plantation Golf Inc. (CD2842, 2844 n.5).

- Assorted telephone interviews held with Adrian Slootmaker (retired Bellemead Vice President), Tony Uanino (retired Bellemead Vice President and retired President of the Halifax entities) and Jason Waksman (Chubb Real Estate). (CD2854).

- Numerous other documents (approximately 800 pages) submitted by counsel for Decedent and Dowman, as well as further archived Pension Plan records and employment system records. (CD2055-2838).

After taking all of the above into consideration, the Committee on September 13, 2019 issued a decision that "tentatively denied" Decedent and Dowman's request for benefits under the Plans ("the Tentative Decision") (emphasis original) (CD2840, 2846). The Committee reiterated its prior reasoning that Decedent and Dowman had only rendered services to Halifax, a non-participating employer, and that they did not qualify for benefits under the terms of the Plans. (CD2844, 2846). The Committee rejected Decedent and Dowman's two

primary arguments that: (1) the corporate distinctions between Halifax and Bellemead were a "sham"; and (2) the transitioning of workers like Decedent and Dowman from Bellemead's payroll to Halifax's payroll in or about 1998 created a disparity between workers not permissible under ERISA. (CD2843-46).

The Committee emphasized that its decision was tentative and offered Decedent and Dowman an opportunity to reply to the tentative decision. Specifically, the Committee requested that Decedent and Dowman submit any documentation they may have received indicating that they were eligible for the Plans, such as requests for beneficiary designations or the Chubb benefits handbook, "You and Your Company." (CD2846-47). Decedent and Dowman responded on November 19, 2019, noting generally that they "received profit sharing documentation in their payroll information from Bellemead/Chubb during the first four (4) years of employments" (CD3065-67), attaching documentation other than the Chubb handbook and beneficiary designations. (CD3068-3106.)

The Committee issued its final decision on January 27, 2020 ("the Final Decision"), recognizing these most recent submissions before once more rejecting the arguments that the corporate formalities were a "sham," and that the transitioning of some Bellemead workers to Halifax payroll employees was in breach of ERISA requirements. (CD3107-09).

Claimants consequently filed a complaint challenging such on March 31, 2020 and an amended complaint on November 25, 2020. (ECF Nos. 1, 8).[8]  The amended complaint largely mirrors the 2016 Lawsuit in that it repeats the two claims from the 2016 Lawsuit, plus a new third claim:

- Count I – Action to Enjoin Further Violations of ERISA Against All Defendants under 29 U.S.C. § 1132(a)(3)

- Count II – Action to Recover Benefits Against the Committee under 29 U.S.C. § 1132(a)(1)

- Count III – Breach of Fiduciary Duty Against All Defendants.[9]

## III.

The motion for judgment on the pleadings is limited to corporate defendants Chubb, Bellemead, and Halifax. Fed. R. Civ. P. 12(c).

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after "the pleadings are closed -- but early enough not to delay trial[.]" Judgment on the pleadings is appropriate when the moving party shows that there is no material issue of fact to resolve and it is entitled to judgment as a

---

[8] The amended complaint substituted Plaintiff Ellen Needham for Mr. Jonathan Needham who died in or around May 26, 2020. (ECF No. 3).

[9] On April 23, 2021, Magistrate Judge Goodman entered an order bifurcating discovery beyond the administrative record related to Count III from the Count I and II (ERISA claims) and permitting the filing of motions not involving disputes of fact. (ECF No. 18).

matter of law.  *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citation omitted).

The motion for judgment on the pleadings specifically concerns Count I, entitled an "[a]ction to enjoin further violations of ERISA against all defendants." (Am. Compl. at ¶¶42-53). The corporate defendants move to dismiss this count because they do not administer the benefits under the Plan.  The same issue was presented in the 2016 lawsuit and there is nothing herein which changes the result. I addressed the issue in the 2016 Lawsuit as such:

> Generally, "[i]n a claim for wrongful denial of benefits under ERISA, the proper defendant is the plan itself or a person who controls the administration of benefits under the plan." *Evans v. Employee Benefit Plan, Camp Dresser & McKee, Inc.*, 311 Fed App'x 556, 558 (3d Cir. 2009). "Exercising control over the administration of benefits is the defining feature of the proper defendant under 29 U.S.C. §1132(a)(1)(B)." *Id.* "Unless an employer is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits." *Id*. at 558-59 (quoting *Daniel v. Eaton Corp.*, 839 2d. 263, 266 (6th Cir. 1988). Pursuant to the express terms of the Plans, the Committee — not Chubb, Bellemead, or Halifax — was delegated with exclusive authority to administer benefits. (CD0055, 0140-41, 0443). Because no defendant other than the Committee had discretion to administer benefits under the Plans, the motion for summary judgment is granted in favor of Chubb, Bellemead, and Halifax.

*Dowman*, 2019 U.S. Dist. LEXIS 63021 at *20. Because there is nothing in the record to suggest that Halifax, Bellemead, or Chubb have since acquired

administrative power over the Plans, they are not proper defendants under Count I and so Defendants' motion is granted with respect to Halifax, Bellemead, and Chubb on Count I.

## IV.

The motion for summary judgment as to the Committee seeks to dismiss Count I, "action to enjoin further violations of ERISA," and Count II, "an action to recover benefits against the Committee." Along with the motion, the Committee submitted a Statements of Material Facts (ECF No. 22) and Plaintiff responded. (ECF No. 28). Here, the Committee submitted 95 paragraphs of material facts of which Plaintiffs denied 20, marked 23 others as "unknown," and admitted others with a qualifying explanation. On its face, it would seem that with this many contested facts, summary judgment is inappropriate. But here, the number of disputed facts may not "affect the outcome" of the motions when applying the appropriate standard. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party shows that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In examining the record, the court gives the nonmoving party the benefit of all reasonable inferences

from the record." *Horn v. Thoratec Corp.*, 376 F.3d 163, 166 (3d Cir. 2004). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson*, 477 U.S. at 248. When considering summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp*, 912 F.2d 654, 657 (3d Cir. 1990).

Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences

in favor of [the non-moving party], and making all credibility determinations in his

favor that no reasonable jury could find for him, summary judgment is

appropriate." *Alevras v. Tacopina*, 226 Fed. App'x 222, 227 (3d. Cir.2007).

A participant in an ERISA benefit plan who is denied benefits by the plan's

administrators may bring an action in federal court "to recover benefits due to him

under the terms of his plan, to enforce his rights under the terms of the plan, or to

clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §

1132(a)(1)(B). "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be

reviewed under a *de novo* standard unless the benefit plan gives the administrator

. . . discretionary authority to determine eligibility for benefits or to construe the

terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115

(1989). "Where a plan administrator is vested with the discretionary authority to

construe the terms of a plan or determine benefit eligibility, we review its decisions

under an arbitrary and capricious standard." *McCann v. Unum Provident*, 907 F.3d

130, 147 (3d Cir. 2018). The Plans each gave the Committee discretion over their

interpretation, and so the Court reviews the matter under an abuse of discretion

standard. (CD0055, 0140-41, 0387, 0443).

A plan administrator's decision will be deemed arbitrary and capricious "if it

is 'without reason, unsupported by substantial evidence or erroneous as a matter of

law.'" *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (citing

*Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)).  Evidence is substantial when "there is sufficient evidence for a reasonable person to agree with the decision." *Courson v. Bert Bell NFL Player Ret. Plan*, 214 F.3d 136, 142 (3d Cir. 2000). The scope of this review is narrow.  *See Doroshow v. Hartford Life & Accident Ins. Co.*, 574 F.3d 230, 234 (3d Cir. 2009).  The Court reviews only for abuse of discretion and may not substitute its judgment for that of the plan administrators. *Id.* In that sense, the Court "sits more as an appellate tribunal than as a trial court." *See Gibson v. Hartford Life & Accident Ins. Co.*, 2007 U.S. Dist. LEXIS 47337, *14 (E.D. Pa. June 27, 2007).

The decision of the administrator "will be overturned only if it is 'clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan.'" *Maciejczak v. Procter & Gamble Co.*, 246 Fed. App'x 130, 131 (3d Cir. 2007).  In applying the arbitrary and capricious standard, plaintiff carries the burden of demonstrating that he qualifies for the benefits requested and that the administrator's decision was arbitrary and capricious. *Connor v. Sedgwick Claims Mgmt. Servs.*, 796 F. Supp. 2d 568, 580 (D.N.J. 2011).

ERISA does not require employers to establish employee benefits plans. *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). "Neither does it require that every employee is entitled to participate in a plan that it does decide to offer[.]"

*Bauer v. Summit Bancorp*, 325 F.3d 155, 159 (3d Cir. 2003). "What ERISA does require, however, is that if an employer decides to provide a plan, that plan is subject to certain minimum requirements regarding participation, funding and vesting standards." *Id.*

On remand, the Committee in its Tentative Decision determined that the crux of the dispute remained whether Decedent and Dowman were employed by and provided service to a participating employer (Bellemead) or a non-participating employer (Halifax). (CD2842-43). Based on the documentation before it, the Committee again concluded that Decedent and Dowman "were employees of (and provid[ed] service to) Halifax" and were thus not employees of a participating employer. *Id.*

This determination may be considered controversial, but it is not arbitrary and capricious.  The Committee acknowledged that Bellemead was a participating employer of the Plans and that Decedent and Dowman received their paychecks from Bellemead for the years 1991 – 1998. Despite those findings, the Committee clung to a "bedrock" policy that Decedent and Dowman had not provided services to Bellemead and therefore were not employees of Bellemead under the terms of the Plans.

The Committee's rationale relied on two provisions to reach its conclusion: a participant must (1) receive compensation from the employer (Sections 1.10, 1.5,

1.11 in each respective plan) and (2) provide service with the employer (Sections 1.9, 1.31, 1.14 in each respective plan). (CD2848-51).

In determining that Decedent and Dowman did not provide services to Bellemead, the Committee reviewed some documents including, but not limited to, the profile histories, weekly timesheets, the salary control reports, and others.  In addition to the documents, the job of a golf pro (Dowman) and the general manager (Decedent) of a golf course directly relate to Halifax's operations, as opposed to a function of Bellemead.   Further, the Committee asked Plaintiffs' counsel to submit any documents that may identify them as members of the Plans, but no such documents were submitted. (CD 2846-47, 3107).

On the other hand, the Plaintiffs argue that Bellemead employees worked alongside and in conjunction with them as there was a merged workforce, so the Committee's decision is nonsensical in distinguishing them from the others. However, the Committee considered each such Bellemead employee, and reasonably explained the difference.[10]  That is, the Committee addressed the concern about how some individuals working on the Halifax Plantation were eligible for the Plans while others were not transitioned to the Halifax 401K plan. (CD2844-46).  Most notably, Bellemead had an internal procedure to designate its employees from those of Halifax.

---

[10] See prior pages 5-6.

17

Certain workers at the Halifax Plantation were Bellemead employees, designated in the A330 personnel system as "OCF" or "ORD," while Halifax employees like Decedent and Dowman were categorized as "ORU". (CD2845 n.7, 2876, 2888). Though Decedent and Dowman alleged several similarly situated employees were somehow eligible for the Plans, the Committee reviewed the A330 records, and found such individuals were considered "shared employees," and were thus eligible for the Plans. (CD2845).

The Plaintiffs also argued that the corporate structures of Bellemead and Halifax corporations are a "sham."  Plaintiffs argue that the infusion of cash from Bellemead to Halifax shows that the corporations are in reality the same and so accordingly, all employees of Bellemead and Halifax should be considered the same.

Most significantly, "the Committee did not find any grounds to believe that financial support from a parent to a subsidiary is somehow abusive of the corporate form and found no support in the Decedent and Dowman's submissions to support this assertion. (CD3109).  Secondly, the Committee reviewed many corporate and tax filings and determined that each corporation maintained its own corporate identity.  As such, it found that the corporate structure of Bellemead and Halifax were consistently maintained and were not a sham.

Plaintiffs rely on *Nationwide v. Darden*, 503 U.S. 318 (1992) (Pl. Opp. at 9), but it is distinguishable. *Nationwide* relied on common law agency principles to determine whether an insurance agent was an independent contractor or an employee as defined by the statute. By contrast, the Committee held that the issue was whether Plaintiff received compensation from a participating employer for services provided to that employer under definitions set forth in the Plans. Further, the Plans explicitly provide that the Committee has the authority to make eligibility determinations. See *Firestone*, 489 U.S. at 115. The Committee carefully considered the documentary evidence relating to Plaintiffs' employment history in the context of each plan. The interpretation of the terms was squarely within the Committee's discretion, as opposed to the *Nationwide* rationale.

Finally, the Court finds that the Committee did not abuse its discretion when it gave little weight to the notion that financial support from Bellemead in Halifax's early years meant that Halifax itself was a "sham." (CD3108-09). Instead, the Committee found that Halifax was a legitimate corporate entity, separate from Bellemead, based on past tax filings and abidance of corporate formalities. *Id*. As such, the Committee's actions were not arbitrary or capricious. The Committee's motion is thus granted with respect to Count I and II.

Bearing in mind that reasonable people may differ on a result, the Committee's decision is not arbitrary and capricious. It is difficult to grasp how

every issue was decided in Bellemead's favor, but it was decided on a full record and substantial evidence.  Most importantly, the Committee evaluated an employee's status under the A330 code, and provided a reason to determine which employees fit into which plan.  As such, after careful consideration of the record as a whole, I find that the Committee did not act in an arbitrary and capricious manner in its Final Decision.

One closing note on this matter: Plaintiffs argued that the Committee's decisions were arbitrary and capricious because the Committee relied on "false facts."  According to Plaintiffs, in the Committee's initial denial of benefits on December 29, 2015, the Committee mistakenly found that Halifax was not a member of Chubb's controlled group of corporations. (Pl. Opp at 11-12; CD0775).  Albeit a mistake, Plaintiffs stretch the point by asserting that this error constitutes an improper "pattern" of the Committee to rely on "false statements" that continued into 2020.  To the contrary, the Committee corrected itself in its July 12, 2016 appeal decision, and upheld its denial of benefits on the basis that neither Decedent nor Dowman provided services to an eligible employer. (CD1106 n.3).  As such, the Committee did not act in any arbitrary and capricious way in the Final Decision due to a since-rectified mistake in its first decision. See generally *Funk v. CIGNA Group Ins.*, 648 F.3d 182, 191 n.11 (3d Cir. 2011) ("A plan administrator's final, post-appeal decision should be the focus of review").

**V.**

The Court turns lastly to Plaintiffs' Count III claim of breach of fiduciary duty against all Defendants.

"ERISA provides that 'a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 491 (3d. Cir. 2000) (quoting 29 U.S.C. § 1104(a)(1)) (emphasis added). "An employee may recover for a breach of fiduciary duty if he or she proves that an employer, acting as a fiduciary, made a material misrepresentation that would confuse a reasonable beneficiary about his or benefits [sic], and the beneficiary acted thereupon to his or her detriment." *Id.* at 492. A party claiming breach of fiduciary duty under ERISA must therefore establish: (1) the defendant is an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation. *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir. 2001).

Here, Plaintiffs allege their breach of fiduciary duty claim arises from Defendants': (1) participation in "an on-going cover-up related to the sham corporate entity Halifax"; (2) interpretation of the Plans "in a manner contrary to applicable federal law"; (3) refusal "to apply the law in effect at the time of [Claimants'] claims"; and (4) refusal "to provide Plaintiffs benefits mandated by

ERISA." (Am. Compl. at ¶71). In brief, all these issues were addressed in the Court's rulings above.

Because the Committee did not abuse its discretion in finding Decedent and Dowman were not participants or beneficiaries eligible for the Plans (CD3107, 3115), the Court finds that there was no fiduciary duty to breach. See *Adams*, 204 F.3d at 491.  Not only did the Committee thoroughly reviewed many documents to reach their decision, it also asked Decedent and Dowman in its Tentative Decision to produce any potentially misleading documents that Plaintiffs may have detrimentally relied on. (CD2846-47). When asked if "either claimant receive[d] anything from Bellemead or Chubb stating they were entitled to retirement benefits" and to provide documentation if so, Decedent and Dowman confirmed that they had never received the Chubb benefits handbook but had "both received profit sharing documentation in their payroll information from Bellemead/Chubb during the first four (4) years of employment." (CD3066-67).

On review, the Committee found that Decedent and Dowman did not identify any such occasion where misleading representations were made. (CD3113-15). Where Decedent and Dowman failed to substantiate any instances of misrepresentations and now to rely upon the "sham" and "transition" arguments that have been discounted above to sustain its breach of fiduciary duty claim, I find

no material fact at issue and thus summary judgment is appropriate. Defendants'
motion is therefore granted as to Count III.

## VI.  Conclusion

For the above reasons, Defendants' motion for summary judgment and for
judgment on the pleadings (ECF No. 20) is granted.


s/*Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

May 11, 2022